ATTORNEY FOR THE RESPONDENT
Julia Blackwell Gelinas
Amy S. Wilson
Indianapolis, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Donald R. Lundberg, Executive Secretary
Laura Iosue, Staff Attorney
Indianapolis, Indiana



# In the
# Indiana Supreme Court

## No. 49S00-0808-DI-468

IN THE MATTER OF:

JEFFREY S. RASLEY,

*Respondent.*

## No. 49S00-0808-DI-467

IN THE MATTER OF:

DAVID M. WOOD,

*Respondent.*

Attorney Discipline Action
Hearing Officer Robyn L. Moberly

**December 11, 2009**

**Per Curiam.**

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's Verified Complaints for Disciplinary Action against Respondent Jeffrey S. Rasley ("Rasley ) and Respondent David M. Wood ("Wood"), and on the post-hearing briefing by the parties. Rasley's 1979 admis-

sion and Wood's 1995 admission to this state's bar subject them to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4.

We find that Respondent Rasley engaged in attorney misconduct by representing a client when the representation was materially limited by his own self-interest in violation of Professional Conduct Rule 1.7. For this misconduct, we suspend Rasley from the practice of law in this state for 120 days without automatic reinstatement.

We find that Respondent Wood engaged in attorney misconduct by representing a client when the representation was directly adverse to another client, i.e., Rasley, in violation of Professional Conduct Rule 1.7. For this misconduct, suspend Wood from the practice of law in this state for 30 days with automatic reinstatement.

**Background**

"Seller" was in the business of rehabilitating and selling distressed real estate. In 2002, Seller wanted to sell several of his properties, including one located on South Evison Street in Indianapolis (the "Property"). A third party brought "Buyer" to Seller, and Seller sold the Property and several others to him by separate land sale contracts. Seller gave control of the Property to Buyer, who collected the rent from the tenants. Seller was required to continue making payments on his own first mortgage and needed Buyer's contract payments to do so. The parties' goal was for Buyer to secure permanent financing and pay off the balance of the Property land sale contract.

To make improvements to the Property, Buyer borrowed $11,500 from Respondent Rasley ("the Loan"). The same third party that brought Buyer and Seller together made the connection with Rasley. The Loan was evidenced by a two-month note ("Note") calling for repayment of $12,266.71, signed by Buyer, which was to be secured by a second mortgage on the Property. Because Seller was the title holder, he had to give his permission for Buyer to use the Property as collateral for the Loan. To do this, Seller signed a "Mortgage" on June 25, 2002—the same date the Note was executed. The hearing officer found Seller believed he was

2

simply giving permission for the Property to be used as collateral. The Mortgage stated, however, that the mortgagor (i.e., Seller) and Buyer were to "pay all indebtedness secured by this mortgage" in the event of default by Buyer.

Buyer fell behind on his payments both to Seller and to Rasley. On November 5, 2003, at Rasley's instruction, his law partner, Respondent Wood, sent a letter informing Buyer and Seller that Rasley was declaring the Loan and Mortgage in default, and that he would proceed with foreclosure if they did not cure the default. On November 17, 2003, Rasley sent a letter to Seller and to Buyer informing them that Wood would not file a foreclosure action on Rasley's behalf so long as the monthly interest payment (about $383) on the Note was paid to him. Knowing that Buyer had no means to pay Rasley, Seller interpreted this letter as demanding interest payments from him personally. Based on Rasley's letters to him, Seller believed that he was liable on the Loan. Wood and Rasley also believed Seller was liable on the Loan by virtue of the Mortgage.

Up to this point, no attorney-client relationship existed between Seller and either Rasley or Wood. Seller approached Wood about hiring Respondents' firm ("Firm") to represent him in his dispute with Buyer concerning the Property and the other properties Buyer was buying from Seller on contract. Seller believed it would be advantageous to hire the Firm rather than different counsel because Rasley would bear some of the litigation expenses (i.e., the expense of asserting Rasley's claim against Buyer and foreclosing on the Property) and Rasley would refrain from asserting his claim against Seller while seeking a global resolution.

On November 25, 2003, Seller and Rasley conferred by phone. Rasley testified that the first topic of conversation was "how to resolve any issues between [Seller] and me as to our conflicting interests in [the Property]." They agreed Seller would assume Buyer's obligation to Rasley, continue making interest payments, and pay the principal when the Property was sold. Rasley and Seller agreed that they would jointly sue Buyer if necessary, with the Firm as counsel for both Seller and Rasley. Rasley did not advise Seller of any alternative courses of action or potential defenses Seller might have against Rasley's claim. Neither Rasley nor Wood advised Seller that he may wish to consult independent counsel.

After unsuccessful settlement negotiations, Seller and Rasley filed suit against Buyer on December 12, 2003. Seller and Rasley later met with Buyer to discuss settling the case. At that time, Rasley asked Seller to sign a document entitled "Assumption of Liabilities," which would explicitly obligate Seller to assume Buyer's debt to Rasley. Seller did not sign the document. On several subsequent occasions, Rasley or Wood asked Seller to sign this document, and Seller declined. On January 31, 2004, while still represented by Respondents and on their advice, Seller signed a settlement agreement under which he regained his properties from Buyer, he assumed liability for Buyer's debt to Rasley, and Buyer was released from his liability to Rasley. Rasley's release of Buyer's liability to him was needed for Buyer to agree to the global settlement. Seller testified that if he had thought that he was not already liable on Buyer's debt to Rasley, he would not have agreed to assume it.

On February 17, 2004, Rasley sent Seller a letter asking him to sign the previously requested acknowledgment of "the priority of my lien on the [Property]" and pay the Firm's bill for attorney fees. The letter stated that if Seller did not comply by February 25, 2004, Rasley would file suit against Seller the next day. Seller did not comply. On February 26, 2004, Rasley and the Firm filed suit against Seller. Seller ultimately agreed to settle the case by paying Rasley $15,600.

## Discussion

Professional Conduct Rule 1.7. Professional Conduct Rule 1.7, as effective at the time at the time of the alleged misconduct, provided:

(a) A lawyer shall not represent a client **if the representation of that client will be directly adverse to another client**, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if **the representation of that client may be materially limited** by the lawyer's responsibilities to another client or to a third person, or **by the lawyer's own interests**, unless:

4

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. . . .

Prof. Cond. R. 1.7 (2003)[1] (emphasis added).

Rasley is charged with violation of Rule 1.7(b) (2003) based on his representation of Seller. Wood is charged with violating Rule 1.7(a) (2003) for his representation of both Rasley and Seller.

Rasley's adverse interest to Seller. A chief point of contention in this case is whether Seller was liable to Rasley on the Note prior to his explicit assumption of the liability as part of the global settlement. Respondents seem to believe there would be no disqualifying conflict of interest if only Seller had confirmed that he did not dispute his pre-existing personal liability on Buyer's debt to Rasley. However, even if this obligation were undisputed, Rasley and Seller would still have adverse interests as creditor and debtor. "The debtor-lender relationship is always potentially, and often inherently, adversary in nature." Matter of Burns, 516 N.E.2d 35, 36 (Ind. 1987). Moreover, even if the Mortgage did *not* make Seller personally liable for Buyer's debt to Rasley, Rasley indisputably held a mortgage lien on Seller's property, which secured the Note. Thus, Respondents' representation of Seller had the clear potential of being adversely affected by Rasley's claims against Seller and/or his property. Had Seller been represented by independent counsel during attempts to reach a global settlement, his counsel would have been free to negotiate for maximum concessions from Rasley to get it accomplished. Rasley apparently gave up some of his rights under the Note as part of the settlement, but his self-interest would have tended to motivate him to give up as little as necessary to get the deal done. Moreover, Seller's repeated refusal to sign an express assumption of Buyer's liability should have alerted Rasley and Wood that there was an unresolved conflict of interest between Rasley and Seller.

---

[1] This rule was amended and its parts restructured effective January 1, 2005. The rule as in effect at the time of the alleged misconduct will be indicated by (2003), and the rule as currently effective will be indicated by (current).

Even if Respondents could have reasonably believed their representation of Seller would not be adversely affected by Rasley's interest, the representation would have been proper only if Seller "consent[ed] after consultation." Prof. Cond. R. 1.7(a)(2) and (b)(2) (2003). Rule 1.7 now requires written "informed consent," Prof. Cond. R. 1.7(b)(4) (current), which is defined as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Prof. Cond. R. 1.0(e) (current). Although this requirement was not in effect at the time of the alleged misconduct, then-existing case law provided the following guidance:

> Consent after full disclosure necessitates the disclosure of the existence of a conflict, the nature of the conflict, advisement that the exercise of the lawyer's independent professional judgment could be affected by the lawyer's own interests, and an insistence that the client seek independent legal counsel.

Matter of Smith, 572 N.E.2d 1280, 1284 (Ind. 1991) (construing former Disciplinary Rules 5-101(A) (acceptance of employment) and 5-104(A) (entering into business transaction with client)).[2] We conclude that Rasley's consultation with Seller was not adequate to satisfy Rule 1.7 (2003).

Because Rasley's representation of Seller could have been materially limited by the his own interests, we conclude that Rasley violated Rule 1.7(b) (2003). Because Rasley and Seller had directly adverse interests, we conclude that Wood's representation of both violated Rules 1.7(a) (2003).[3]

Discipline. Both Respondents lack insight into their misconduct and have expressed no remorse for it. This may be due in part from the lack of focus by all involved on the inherent

---

[2] Although Rule 1.7 (current) does not explicitly require an attorney with a conflict of interest to advise a client to seek independent legal counsel, the requirement that the attorney explain alternatives to the client, *see* Prof. Cond. R. 1.0(e) (current), suggests that the attorney should at least advise the client of the option of consulting independent counsel. We note that the rule concerning entering into a business transaction with a client explicitly requires that the client be given a reasonable opportunity to seek the advice of independent counsel in the transaction. *See* Prof. Cond. R. 1.8(a) (current).

[3] The Commission also charged Wood with violating Professional Conduct Rules 1.9(a) and 1.10(a). We conclude these charges are not supported by clear and convincing evidence. *See* Admis. Disc. R. 23(14)(h).

conflict of interest arising from Rasley's claim against Seller and his property, which existed whether or not Seller disputed the claim. Respondents did not intentionally harm Seller and worked diligently to achieve what he indicated he wanted most—to regain control over his properties from Buyer as soon as possible. Neither Respondent has any disciplinary history, and Rasley has an extensive history of legal, church, and community service. Under these circumstances, we conclude that Rasley should be suspended from practice for 120 days without automatic reinstatement, and that Wood should be suspended from practice for 30 days with automatic reinstatement because of his lesser role in the misconduct and his junior position to Rasley in experience and within the Firm.

## Conclusion

The Court concludes that Respondent Rasley's representation of Seller violated Rule 1.7(b) (2003). For this professional misconduct, the Court **suspends Respondent Rasley from the practice of law in this state for a period of at least 120 days, without automatic reinstatement, beginning January 22, 2010.** Respondent shall not undertake any new legal matters between service of this opinion and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent Rasley may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4).

The Court concludes that Respondent Wood's representation of both Rasley and Seller violated Rules 1.7(a) (2003). For this professional misconduct, the Court **suspends Respondent Wood from the practice of law for a period of 30 days, beginning January 22, 2010.** Respondent shall not undertake any new legal matters between service of this order and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the period of suspension, provided there are no other suspensions then in effect, Respondent Wood shall be

7

automatically reinstated to the practice of law, subject to the conditions of Admission and Discipline Rule 23(4)(c).

The costs of this proceeding are assessed against Respondents. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

All Justices concur.